GUSTAVUS T. KIRBY, Respondent, *v.* BROWN, WHEELOCK: HARRIS, VOUGHT & Co., INC., Appellant.

(Argued November 5, 1930; decided January 6, 1931.)

*Nathan L. Miller* and *H. Bartow Farr* for appellant. The course of conduct pursued by defendant, in good faith, was in complete compliance with its instructions and undertaking. (*Pickett* v. *Pearsons*, 17 Vt. 470; Mechem Agency, § 1266; 2 C. J. § 374.) It was the duty of the defendant to secure the best price possible for its employer. It could not validly agree to secure the property for a purchaser at the lowest price possible. To be valid the plaintiff's authority to Vought must be construed to empower him to match the highest bid. That could only be done after the other bids were opened. (*Sirkin* v. *Fourteenth St. Store*, 124 App. Div. 384; *Schank* v. *Schuchman*, 212 N. Y. 352; *Morgan Munition Supply Co.* v. *Studebaker Co.*, 226 N. Y. 94; *Empire State Ins. Co.* v. *American Central Ins. Co.*, 138 N. Y. 446; *Duryee* v. *Lester*, 75 N. Y. 442; *Jacobs* v. *Beyer*, 141 App. Div. 49.)

*Hugh S. Williamson, Hiram Thomas* and *Edward A. Craighill, Jr.*, for respondent. There is evidence to support the conclusion that defendant's breach of its agreement to submit plaintiff's bid was the cause of plaintiff's failure to become the purchaser of the school property.

(*Ainsworth* v. *Backus*, 5 Hun, 414; *Small* v. *Houseman*, 208 N. Y. 115.) Plaintiff is entitled to recover whether or not defendant's default was a mere act of omission and resulted merely in withholding a benefit from plaintiff. Defendant's default was not a mere omission and its result was more than a mere withholding of a benefit. (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160; *Glanzer* v. *Shepard*, 233 N. Y. 236; *Siegel* v. *Spear & Co.*, 234 N. Y. 479; *Ainsworth* v. *Backus*, 5 Hun, 414; 1 Williston Contracts, § 138; *Boyce* v. *Greeley Square Hotel Co.*, 228 N. Y. 106; *Rich* v. *N. Y. C. R. R. Co.*, 87 N. Y. 382; *Byxbie* v. *Wood*, 24 N. Y. 607; *Neftel* v. *Lightstone*, 77 N. Y. 96; *People* v. *Wood*, 121 N. Y. 522; *Goodwin* v. *Griffis*, 88 N. Y. 629; *Chaplin* v. *Hicks*, L. R. [1911] 2 K. B. Div. 786.)

KELLOGG, J. The plaintiff was the owner of the frontage on the east side of Madison avenue, between Fifty-sixth street and Fifty-seventh street; of a frontage on the north side of Fifty-sixth street, extending easterly from Madison 125 feet; of a frontage on the south side of Fifty-seventh street, extending easterly from Madison 75 feet. Miss Chapin's School for Girls owned a frontage on Fifty-seventh street, extending easterly from the plaintiff's lot 50 feet. The school property had peculiar value for the plaintiff, since, by its acquisition, he would become the owner of a rectangular block, having a frontage on both Fifty-seventh and Fifty-sixth streets of 125 feet, and a frontage of 200 feet on Madison. When the school property was offered for sale, no written bid was submitted by the plaintiff, and consequently the property was sold to others. The plaintiff's failure to bid, and the loss of an advantageous purchase, is attributed to the defendant, a real estate broker, and its failure to perform an alleged undertaking made by it to present an offer for the property and purchase it for the plaintiff. Upon the theory that such an agreement was made and

broken, damages have been awarded to the plaintiff as compensation for the loss of a prospective increase in value of his adjoining properties.

The trustees of the Chapin School in November, 1925, employed the defendant, Brown, Wheelock: Harris, Vought & Co., Inc., to make a sale of their school property on Fifty-seventh street. Vought, a director of the defendant, informed the plaintiff, Kirby, of the probable sale. As stated by the complaint, Kirby told him that he desired the property and " would pay therefor as high a price as any other bidder." Vought thereafter informed Kirby that the school trustees would not accept an offer for the property " without giving plaintiff an opportunity to meet the same."

George E. Roosevelt, chairman of a committee of the school board, on January 13, 1926, gave written notice to the defendant and others that, on January 18th, 1926, at three P. M., the committee would receive written bids for the property. The Roosevelt letter specifies that the lowest bid must equal $550,000; that the school will retain possession until July 1st, 1928; that the committee " reserves the right to reject any offer." The school then occupied not only 32 and 34 East Fifty-seventh street, but two floors in the Ehrich Building, adjoining on the east, and numbered 36 East Fifty-seventh street. The letter points out this fact and states that " any arrangements by which the school can continue to occupy the necessary additional space in a convenient manner will be given consideration in fixing upon the offer that will be accepted."

On being informed by Vought of the contents of the Roosevelt letter, the plaintiff, Kirby, made a draft of a proposed letter to the defendant and handed it to Vought. This letter sets forth the fact that Kirby had been in communication with Ehrich, the lessee of 36 East Fifty-seventh street; that Ehrich had purchased the lease for $30,000; that he would sell it for $55,000 plus $10,000;

that if Kirby would pay this sum Ehrich would make no bid for the school property. Kirby then states that he is prepared to make this " offer." He will purchase the leasehold from Ehrich for as little as possible, not less than $55,000; he will enter into a lease with the Chapin School for the two floors until July 1, 1928. The price he will bid is thus stated: " That from the amount which is to be considered as the purchase price of the Chapin School property there be deducted the amount of the difference between the amount which will have to be paid to Mr. Ehrich (perhaps as much as $65,000) and the $30,000 paid by Mr. Ehrich for such leasehold." It will be noted that the so-called " offer " is indefinite in two particulars. It fails to state the precise sum which Kirby will pay for the school property. It fails to name the rental which the school must pay Kirby for the two floors in the Ehrich Building.

The defendant, through Vought, " in consideration of a commission which the said Trustees agreed to pay," as alleged in the complaint, promised the plaintiff, Kirby, " to state to the Committee of the Trustees of Miss Chapin's School for Girls, at the office of said Roosevelt, before three o'clock on January 18th, 1926, that plaintiff desired to purchase the aforesaid school property on terms more favorable to the school than any other bid received, and to submit to the said committee within the aforesaid time and at the aforesaid place, a bid on behalf of plaintiff for the purchase of the aforesaid school property in form and substance acceptable to said Committee." The complaint also alleges as follows: " Relying upon the aforesaid, plaintiff refrained from presenting directly to the committee of the said Trustees any other bid for the purchase of the property."

The defendant, by Vought, attended the meeting of the committee at three o'clock on January 18th, but, as the complaint alleges, " neglected to present to the said Committee any bid whatsoever in behalf of plaintiff, or

to state that plaintiff desired to purchase the aforesaid school property on terms more favorable to the school than any other bid received." At the meeting three bids were received and opened by the committee: one for $560,000; one for $561,000; and one for $565,000. Thereafter Vought informed the plaintiff that he would have to pay for the property from $560,000 to $565,000; that the sale would be completed on the following day, January 19th, when the committee would hold a meeting to make decision. On the day following the meeting was held. The committee then refused to receive any bid from Vought for the plaintiff or to permit the plaintiff to make a bid in his own behalf. It thereupon accepted the bid for $560,000.

It will be observed that the allegations of the complaint in relation to the defendant's agreement with the plaintiff, which we have stated, set up promises by the defendant which, if not inconsistent, are at least diverse in character. The defendant promised (1) to state to the committee prior to the opening of bids " that plaintiff desired to purchase the aforesaid school property on terms more favorable to the school than any other bid received; " and (2) " to submit to the said committee within the aforesaid time and at the aforesaid place, a bid on behalf of plaintiff for the purchase of the aforesaid school property in form and substance acceptable to said Committee."

If it were the fact that the defendant ever agreed to formulate a definite bid and submit it to the committee before the opening, interesting questions, relating to consideration, promissory estoppel, and the validity of an alleged undertaking made by the defendant, an agent of the Chapin School, the seller, to bid in the property for the plaintiff, a prospective buyer, might have arisen. However, the record is devoid of proof that the defendant ever so promised. Therefore, the second allegation, to the effect that the defendant agreed " to submit to the

said committee " a definite bid " in form and substance acceptable to said committee " may be wholly disregarded.

The plaintiff, in his complaint, says that he informed Vought, in reference to buying the school property, " that he would pay therefor as high a price as any other bidder; " that thereafter Vought informed him that no offer would be accepted by the trustees " without giving the plaintiff an opportunity to meet the same." In his draft letter to the defendant, containing his " best and fairest offer " to purchase, he states that he will pay a sum to be determined by deducting from " the amount which is to be considered as the purchase price of the Chapin School property " an appropriate sum for the Ehrich lease, to be ascertained in a way specified. No figure naming a definite sum which plaintiff is willing to pay is given. In handing a copy of the draft letter to Vought, the plaintiff said: " to meet the situation, I have drawn up here a letter which embodies my ideas of the whole transaction; " " this is my proposition; " " now, you see Vought, I have tried to meet the entire situation in this letter." He testifies that he said to Vought, in reference to the Ehrich payments: " Now it seems to me only fair that from whatever I have to pay for the school property, that should be deducted; " that he said further " but you are to go there, you are to buy the property for me at the best price you can get it for and deliver to the trustees my terms and conditions relative to the property they must have and have demanded for school purposes." Vought said: " Mr. Roosevelt has promised that I may be personally present on Monday afternoon at the time the offers are to be opened; " " I know what you want and I will buy the property for you for the least possible, under the conditions, set down in your letter." After the meeting the plaintiff, complaining of Vought, said to the trustees: " He was to buy the property for as much as any one else would pay for it." In November there had been a

conversation between Roosevelt and Vought which was reported by the latter to the plaintiff to have been " that the trustees would give Mr. Vought a right to submit a bid for me, before they closed with anybody else." Accepting at its face value every line of testimony given on the plaintiff's behalf, there is not a word of proof that the plaintiff ever named a specific sum which he would pay for the property; that Vought ever agreed to formulate a definite offer for the plaintiff; that he was ever asked thus to formulate a bid; that he ever agreed to present a bid, prior to the meeting, which should name a definite price. The complaint, the letters, and the testimony tell but one story: Kirby, from the beginning, labored under the impression that, in order to get the property, it was unnecessary for him to make a bid naming a specific sum; that it was sufficient if he agreed to meet or better any other bid made. Accordingly he directed Vought personally to attend the meeting of the committee; to tell the committee that he, Kirby, would pay a price ascertainable by deducting from the highest bid made the amount Kirby had been required to offer Ehrich for the lease, less the amount Ehrich had paid therefor. Hence it is, that the theory of the complaint, that the defendant undertook and neglected to formulate and present a definite bid, must be abandoned.

The plaintiff's only reliance must, therefore, be that the defendant promised and neglected " to state " to the school committee, " before three o'clock on January 18th, 1926, that plaintiff desired to purchase the aforesaid school property on terms more favorable to the school than any other bid received." Assuming that such were the fact, and that the defendant did breach a promise so made, nevertheless the plaintiff could have no recovery. Clearly a statement that plaintiff would offer terms " more favorable to the school than any other bid received " is not a statement of a present bid; it depends for definiteness upon a disclosure of terms contained in other bids

yet to be opened; it becomes definite, and, as such, a genuine bid, only when the opening of bids is already a past event. To all intents and purposes, therefore, it is the equivalent of a bid made subsequently to the opening. Now, the plaintiff never was deprived of an opportunity to submit a bid after the opening. The committee had reserved the power " to reject any offer; " it adjourned, after the opening, for twenty-four hours to consider its decision. Meanwhile, Vought reported to the plaintiff that a bid of $565,000 had been submitted, and that the plaintiff would have to pay that sum. Kirby contented himself with saying, " Well, that is a whale of a price, but if I have got to pay it, I have got to pay it." He said that he would immediately attend before the committee, and, in the matter of a down payment, he would be " prepared to pay any amount which they may demand." He did attend within the twenty-four hour interim, but his bid was rejected. The committee said that they regarded it as unfair to accept his bid after the other bids had been opened. They would have considered it as equally unfair to accept a prior offer of " terms more favorable to the school than any other bid," and would have rejected such an offer. Therefore, the plaintiff was not injured by the defendant's failure to present to the committee, prior to the opening, a statement that the plaintiff would make such a bid. It was the position of the trial judge, in his charge to the jury, that the plaintiff's case depended upon the making of a promise by the defendant " to formulate . or make up a bid of the plaintiff to comply with the terms of the invitation to bid." It was the position of plaintiff's counsel on the argument here that a recovery might not be sustained on the theory that the defendant breached its promise to state to the committee prior to the meeting that the plaintiff would offer " terms more favorable to the school than any other bid." Such being the only promise which the proof

shows was made by the defendant, the recovery cannot be sustained.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgment accordingly.